# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

TRACY LYNN COWAN,

                Petitioner,

v.                                          Case No. 06-13846

CLARICE STOVALL,

                Respondent.

_____/

## OPINION AND ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

In 2006, Tracy Lynn Cowan, who is serving a lengthy prison sentence at a Michigan prison, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging her Oakland Circuit Court jury trial conviction of possession with intent to deliver more than 650 grams of a cocaine, Mich. Comp. Laws § 333.7401(2)(a)(1), possession with intent to deliver marijuana, Mich. Comp. Laws § 333.7401(2)(d)(3), and two counts of commission of a felony with a firearm, Mich. Comp. Laws § 750.227b. (ECF No. 1.)

In 2008, the court denied relief. (ECF No. 40.) Cowan appealed the decision, and the Sixth Circuit in remanded the case for the court to determine whether Cowan should be granted leave to present an unexhausted claim of ineffective assistance of counsel to the state courts. (ECF No. 52.) The Sixth Circuit found that Cowan had made a persuasive offer of proof that her trial counsel was ineffective for failing to investigate and call defense witnesses at trial to support her defense that she did not have possession of the narcotics forming the basis for her convictions. After protracted

proceedings in the state courts, the trial court held an evidentiary hearing on the claim. Cowan was unable to make good on her offer of proof when only one of four uncalled defense witnesses testified. The state trial and appellate courts thereafter denied relief.

In 2019, having exhausted her state court remedies, Cowan filed an amended habeas petition. (ECF No. 75.) The amended petition raises not only the failure-to-investigate claim, but also numerous additional claims of ineffective assistance of counsel new to this action. The court will deny the amended petition because the state court reasonably adjudicated Cowan's failure-to-investigate claim, and her new claims are barred by the statute of limitations. The court will also deny Cowan a certificate of appealability.

## I. BACKGROUND

The Michigan Court of Appeals summarized the police investigation leading to the charges against Cowan:

> A charged drug-dealer-turned-informant named a man who lived on Clarita Street in Wayne County as one of his sources for cocaine. Police began monitoring the address and confirmed that the address experienced heavy foot traffic and other activity indicative of a drug house. Police observed as the informant called his source and set up a cocaine purchase. Police then monitored the informant as he arrived at the Clarita Street address and discussed the proposed sale with his source. The source confirmed that he would provide the informant with the requested cocaine and asked the informant to drive him to a different house - defendant's residence. The informant obliged and the source entered defendant's residence, returning a few minutes later with a plastic baggie containing 2½ ounces of a powdery white substance in his pocket. They then returned to the Clarita Street address, and the source took the baggie inside. Police continued to monitor the situation as the source came back out of the house and entered the unattached garage. When the source came out of the garage, he carried two small baggies of cocaine, which he gave to the informant. The informant paid the source with prerecorded bills provided by police and drove away. He drove to a rendezvous point and turned the baggies over to police.

Police sought warrants for both the house on Clarita Street and defendant's house. According to the affidavit for the warrant on defendant's house, the informant told police that the source went into defendant's house and returned with 3 to 4 ounces of cocaine. To bolster the informant's credibility, the affidavit indicates that the informant voluntarily conducted the buy, and that he provided narcotics information contrary to his penal interest. While the affidavit did not mention that the informant had been charged with possession of a controlled substance, later testimony revealed that the informant was not promised leniency but was only assured by police that they would vouch for his cooperation at sentencing. The affidavit also claims, in a conclusory manner, that the informant was a credible and reliable source of information based on undisclosed personal observations. The magistrate issued a search warrant for defendant's home.

During their search of defendant's house, police discovered over 700 grams of cocaine, over 250 grams of marijuana, baggies and other packaging material, a scale, a loaded twelve-gauge shotgun, a loaded nine-millimeter handgun, and women's clothing in a closet in the master bedroom. In the basement, police found several "cocaine presses" for turning powder cocaine into densely packed "bricks," a blender, single-edged razor blades, baking soda and other "cutting" agents, a digital scale, rubber gloves, more packaging, and another 800 grams of cocaine. One of the boxes of baking soda had defendant's thumbprint on it.

*People v. Cowan*, Case No. 250838, 2005 WL 119811, at *1 (Mich. Ct. App. Jan. 20, 2005).

Cowan and another man directly involved in the control buy were later charged with narcotics and firearm offenses. Cowan was *not* charged for participating in the controlled buy itself. Rather, the charges against her concerned the cocaine, marijuana, and firearms found inside a house located on Appoline Street in Detroit. The Michigan Court of Appeals characterized the residence as "defendant's house" in its opinion, a fact Cowan now disputes. Cowan was inside the Appoline residence with her children when police raided it the night after the controlled buy. Police believed Cowan jointly possessed the cocaine with another man who was not present—her former boyfriend Rory Jones—because much of it was found in the closet of the locked master bedroom,

Cowan admitted to having a key to that room, women's clothing were found in the room, and letters bearing Cowan's name with the Appoline address were also found in the room. Jones was not prosecuted at the time of Cowan's trial.

At trial, Shannon Portis testified to his agreement to participate in the controlled buy, which included his drug-dealing contact taking him to the Appoline residence. (ECF No. 8, PageID.551-58.) Portis did not go inside the Appoline residence, nor did he see Cowan at any point during the operation. (*Id.*)

Farmington Hills Police Officer Richard Wehby testified that he was assigned to a narcotics task force at the time of the offense. Wehby reached an agreement with Portis to conduct a purchase of cocaine. (*Id.*, PageID.575.) Officers followed Portis during the operation to both residences, and Wehby's testimony largely corroborated Portis' account of the operation. (*Id.*, PageID.576-79.) After the buy, Wehby obtained search warrants for both the Clarita and Appoline residences. (*Id.*, PageID.582.)

Wehby was present when the Appoline house was searched on the night after the controlled buy. (*Id.*, PageID.583.) Cowan was inside the residence, but she did not appear to have come from the locked master bedroom when officers entered the house. (ECF No. 8-2, PageID.617.) Officers forced entry into the locked bedroom, and inside Wehby found a closet with another lock on it. (*Id.*, PageID.589.) Inside the closet, officers discovered a package of 549 grams of cocaine, another package of 114.5 grams of cocaine, and a loaded handgun. (*Id.*, PageID.590-91, 597.) Women's but not men's clothing were also located in the master bedroom and closet. (*Id.*, PageID.597.) Wehby also found numerous letters bearing Cowan's name addressed to the Appoline residence inside the master bedroom. (*Id.*, PageID.587-88.) A quantity of marijuana was

found in a gallon-sized zip-lock bag in the closet as well, and on top of it there was an empty cigar box from which Cowan's fingerprint was later identified. (*Id.*, PageID.612-13, 616.)

On cross-examination, Wehby noted that some of the correspondence found at Appoline also bore Cowan's name, but it was addressed to 522 Smith Street in Detroit. (*Id.*, PageID.626.) A checkbook bearing Cowan's name also listed the Smith Street address. (*Id.*, PageID.627.) Wehby conceded that it was possible that Appoline was used as a stash house for a narcotics dealer who lived elsewhere. (*Id.*, PageID.628-29.)

Oakland County Sheriff's Deputy Dave Scott was also present during the search. (ECF No. 8-3, PaageID.401.) He searched the basement, and behind the furnace area he located a locked pantry. (*Id.*, PageID.403, 411.) Scott found two cocaine presses and cocaine residue in the area. (*Id.*, PageID.404-05.) Inside the pantry, Scott also found 800 grams of cocaine individually packaged into bricks, a blender, cutting agents, baggies, and razor blades. (*Id.*, PageID.411-14, 416-18.)

Farmington Hills Police Officer Paul Nicholas also participated in the search. (ECF No. 8-4, PageID.449.). He testified that when he entered the master bedroom where the cocaine was found, the closet in the master bedroom was unlocked and already partially opened. (*Id.*, PageID.450.)

Farmington Hills Police Detective Kevin Cronin testified that he was also present during the search. He subsequently interviewed Cowan and videotaped the interview. (*Id.*, PageID.492.) Cowan never admitted to knowing that cocaine was present in the house, and she denied being at the house at the time of the controlled buy. (*Id.*) Cowan admitted to Cronin that she had keys to the locked doors. (ECF No. 8-5, PageID.495.)

Cronin's tactic was to try to obtain a statement by Cowan that the cocaine belonged to Rory Jones. (*Id.*, PageID.495-97.) Cronin testified that based on his experience as a narcotics officer, however, he believed that the cocaine belonged to both Jones and Cowan. (*Id.*, PageID.497.) Cronin explained that there was over $150,000 worth of cocaine discovered, and in his experience a drug dealer would not leave that much cocaine with someone they did not trust. (*Id.*) Cronin did not know that Rory Jones would not be home when they raided the house. (*Id.*, PageID.518.)

Oakland County Sheriff's Deputy Ann Horsman was qualified as an expert in fingerprint identification. (ECF No. 7, PageID.282.) Horsman found one identifiable print for Cowan on the empty cigar box found in the master bedroom closet. (*Id.*, PageID.288.)

After the prosecution rested, defense counsel moved for a directed verdict. (*Id.*, PageID.312.) Counsel argued that there was no evidence that Cowan was aware of the presence of the narcotics in the residence. (*Id.*) The motion was denied. (*Id.*, PageID.315.)

Retired Detroit Police Detective Theo Smith testified that he was hired as Cowan's private investigator. (ECF No. 7-2, PageID.222-23.) He identified photographs of the basement and noted that the cellar could not be seen from most of the basement. (*Id.*, PageID.233.) He further noted that in order to see all the way into the closet in the master bedroom, he had to move other items out of the way. (*Id.*, PageID.260.) This testimony was aimed at establishing that a person staying at the Appoline residence might not be aware of the presence of the narcotics.

The jury found Cowan guilty of the charged offenses, and Cowan pursued a direct appeal. Her appellate counsel filed an appellate brief that raised three claims:

I. The trial court erred in denying Defendant's request for a *Franks* hearing, and in denying her motion to suppress the evidence which was discovered as the result of the execution of the search warrants in this case.

II. Defendant's Federal and State constitutional rights to the effective assistance of counsel were violated where she was prejudiced by her lawyer's failure to perform at an objective standard of reasonable competence [for (1) failing to object to "profiling" evidence, (2) eliciting testimony whether Cowan's home might be a "stash house," and (3) failing to object to opinion testimony from the interrogating officer.]

III. The trial court erred in declining to sentence Defendant pursuant to the amended narcotics sentencing statutes where Defendant was not convicted until after the effective date of those amendments.

The Michigan Court of Appeals affirmed the trial court in an unpublished opinion. *Cowan*, 2005 WL 119811. Cowan subsequently filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard order. *Cowan*, 702 N.W.2d 579 (Table) (Mich. 2005).

Cowan then filed the instant action, initially raising only her direct appeal claims. After Respondent filed its answer, and after the statute of limitations had expired, Cowan filed a motion to amend her petition to include eight new claims: (1) trial counsel was ineffective for failing to timely move for the admission of the defense videotape of the layout of the Appoline residence; (2) trial counsel failed to raise an alibi defense and interview alibi witnesses; (3) trial counsel failed to object to prosecutorial misconduct; (4) trial counsel failed to object to the prosecutor's inadequate pre-trial investigation; (5) the prosecutor committed misconduct by improper vouching, improper bolstering, and failing to investigate the possible perjury by a prosecution witness; (6) Cowan was

7

denied her right to present a defense by when she was denied leave to present video and photo evidence; (7) Cowan's alibi defense shows she is innocent; and (8) appellate counsel was ineffective for failing to raise meritorious claims. (ECF No. 21.)

The court denied Cowan's motion to amend because the new claims did not relate back to the original petition, rendering them time-barred under 28 U.S.C. § 2244(d). (ECF No. 29.) The Court subsequently determined that the claims Cowan raised in her original petition were meritless, and it denied the petition and denied a certificate of appealability. (ECF No. 40.)

Cowan appealed, and the Sixth Circuit granted her a certificate of appealability with respect to her ineffective assistance of trial counsel claim. (ECF No. 51.) The Sixth Circuit subsequently reversed in part, finding that Cowan's unexhausted failure to investigate claim was not clearly meritless, related back to the filing of her original petition that alleged trial counsel was ineffective for failing to investigate a defense, and it was therefore not time barred. *Cowan v. Stovall*, 645 F.3d 815, 817, 819-20 (6th Cir. 2011). The decision denying the petition was otherwise affirmed. *Id.* at 817, 821.

The Sixth Circuit described the potential merit of the unexhausted failure to investigate claim as follows:

> Cowan's claim is that her lawyer was ineffective as a result of his failure to interview at least four other witnesses who were in the Appoline house on the date of the controlled buy and raid. That omission itself amounted to patently deficient performance on her lawyer's part. And we think it only common sense that the prejudice that flowed from that omission comprises all of the testimony that the record suggests those witnesses would have offered. The record is not fully developed before us, in part because the claim is unexhausted. But the record does include sworn affidavits from four witnesses whom Perlman should have interviewed. Those affidavits suggest that at least two witnesses—one of whom was Rory Jones's son—would have testified that Cowan had been absent not only during the controlled buy, but also when Jones allegedly

8

stashed the drugs in the house that same day. See Tucker Aff. ¶ 6; Richard Carter Aff. ¶ 5. The latter affidavit also says that Cowan became upset with Jones on one occasion when he left drugs in the house. Id. ¶ 7. Further development of the claim may yield additional relevant testimony. None of this is to say, of course, that Cowan's claim is actually meritorious; that issue is for the state courts to decide, at least in the first instance. But it is to say that we should not dismiss the claim out of hand as frivolous. Even the Warden conceded at oral argument before us that we should remand the claim, rather than dismiss it outright, if we held that it was timely presented and unexhausted—and now we have so held.

*Id*. at 820.

Because the new claim was unexhausted, the Sixth Circuit remanded the case for the court to determine whether Cowan could establish good cause for failing to previously present her new claim to the state courts such that the habeas petition should be stayed to allow her to exhaust the claim. *Id*. at 820-21. The court found that Cowan demonstrated good cause to warrant a stay, and it directed Cowan to return to state court and exhaust her "ineffective assistance of counsel claim based on a theory of counsel's failure to interview certain key witnesses." (ECF No. 60, PageID.1792.)

Cowan thereafter filed a motion for relief from judgment in the trial court. The motion, however, was not limited to the one claim determined by the Sixth Circuit to relate back to the filing of the petition, but instead it raised a total of fourteen new claims. The case sat in the trial court for a period of several years without any movement due to a clerical error. The trial court eventually appointed counsel for Cowan, and he filed an amended motion for relief from judgment that raised two additional claims of ineffective assistance of trial counsel. The trial court denied the motions because the claims lacked merit and under Michigan Court Rule 6.508(D)(3). (ECF No. 82-5.)

Cowan then filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied by form order. (ECF No. 82-10.) Cowan then filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court remanded the case back to the trial court for a hearing on two issues: "(1) whether the defendant's trial counsel was ineffective for failing to call witnesses who may have provided exculpatory information; and (2) whether the defendant is entitled to relief from judgment based on these claims." *People v. Cowan*, 902 N.W.2d 418 (Table) (Mich. 2017).

The trial court conducted the evidentiary hearing on June 8, 2018. Besides her own testimony, Cowan presented only one of the four witnesses she claimed her counsel should have interviewed and called as defense witnesses, her daughter Rachel Carter. Cowan's trial counsel, David Perlman, had since passed away.

Rachel Carter testified at the hearing that at the time of the police raid, she was a teenager and lived at the Appoline residence with her siblings Crystal and Richard, as well as Rory Jones' son Papillon, who she regarded as a brother. (ECF No. 82-6, PageID.2199.) When asked about her siblings' whereabouts, Carter testified that Papillon had "his own court issues" in another state but lived in Detroit. (*Id.*, PageID.2199, 2202.) She had no contact with Richard for the last few months. (*Id.*, PageID.2199.) And Crystal lived in Georgia, knew about hearing, but was unable to make the trip. (*Id.*)

During the time period of the police raid, Carter explained that Cowan "stayed back and forth" between Appoline and her grandmother's house on Smith Street, though she spent more time at her grandmother's house. (*Id.*, 2219-20.) The Appoline

10

residence was Cowan's childhood home. (*Id.*, PageID.2200.) While Carter and her siblings lived there, Cowan would come to the Appoline residence "mostly every day." (*Id.*) But she did not often sleep there. (*Id.*)

On the day of raid, Cowan drove Carter and Crystal home to the Appoline residence after school, and Cowan stayed the night. (*Id.*, PageID.2201.) Rory Jones was also at the house that evening, but Carter did not know who arrived at the Appoline residence first. (*Id.*) They did not arrive home until around 6:30 p.m. that evening. (*Id.*, PageID.2210.) Rory left the residence after they arrived home. (*Id.*) Carter testified that Jones helped pay rent for Appoline because his son Pappilon, who was not related to Cowan, lived there. (*Id.*, PageID.2201.) Jones was not there when the police came. (*Id.*, PageID.2202.) According to Carter, Jones had permission from Cowan to stay at the Appoline residence. (*Id.*)

Carter testified that Cowan had "left her bedroom set and maybe some clothes in her closet and . . . some stuff in the drawer but a lot or her stuff was at my grandmother's house." (*Id.*, PageID.2202-03.) Carter estimated that "it was probably even, she had a whole room in my grandmother's house too, so she had stuff over there too, so it might have been even." (*Id.*, PageID.2203.) Further, Carter stated that when Cowan slept at Appoline, Cowan stayed in the bedroom where the cocaine and guns were later found. (*Id.*) That was also the room that Jones used when he stayed over, though Cowan and Jones never slept in the room on the same night. (*Id.*, PageID.2203, 2210.) According to Carter, both Cowan and Jones had keys to that bedroom and to the locked closet inside it. (*Id.*, PageID.2203.) Cowan "paid the bills" for Appoline, and Jones helped. (*Id.*, PageID.2207.)

Carter testified that she moved to the Appoline residence with her siblings and Cowan sometime in 1999. (*Id.*, PageID.2206.) She confirmed that both Rory Jones and Cowan were at the Appoline house at the same time on the day before the nighttime police raid. (*Id.*, PageID.2207.)

Cowan also testified at the evidentiary hearing. She said that she stayed overnight at Appoline only once a month or so at the time of the raid, and it was coincidental that she happened to be there on the night of the police raid. (*Id.*, PageID.2212.) Cowan testified that she nevertheless went to the Appoline residence almost every day because her children lived there. (*Id.*, PageID.2215.) She testified that most of her clothes, however, were at Smith Street. (*Id.*, PageID.2213.) She admitted to having a key to the master bedroom, but she said the key to the locked closet was kept in the linen closet. (*Id.*, PageID.2212.)

Cowan testified that Rory Jones was never a resident of the house. (*Id.*) They had broken up years before. (*Id.*) Jones gave Cowan money from time to time, as his son Papillon lived at Appoline. (*Id.*, PageID.2215.) Cowan did not know whether Jones had a key to the master bedroom, but she conceded that he must have, since the drugs were found there. (*Id.*, PageID.2212.) On the day of the raid, contrary to her daughter's testimony, Cowan said that Jones was not at the house when they arrived home. (*Id.*) Cowan was not aware that cocaine was being sold out of the house or that it was present in the house that night. (*Id.*, PageID.2212-13.)

Cowan testified that she had no recent contact with Papillon. (*Id.*, PageID.2213.) Nor had she talked with Richard Carter for the last few months. (*Id.*) Cowan explained

that Crystal was not able to attend the hearing because she lived in Georgia and could not afford to travel. (*Id.*, PageID.2213.)

Following the hearing, the trial court denied the motion for relief from judgment. The court cited Michigan Court Rule 6.508(D)(3), but the body of the opinion only discussed the merits of the claim, finding "defendant has not demonstrated that she was denied the effective assistance of counsel by defense counsel's failure to interview, or call at trial, individuals that were present at the house on the evening of trial." (ECF No. 82-9, PageID.2315.)

Cowan filed a delayed application for leave to appeal in the Michigan Court of Appeals, but that court denied leave to appeal "for failure to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 82-12.) The Michigan Supreme Court likewise denied leave to appeal by standard order. *People v. Cowan*, 932 N.W.2d 633 (Table) (Mich. 2019).

Cowan then returned to this Court and filed her amended petition. (ECF No. 75.) The matter has been thoroughly briefed and is ready for disposition. (ECF Nos. 81, 85.)

## II. STANDARD

Title 28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law or the adjudication was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of [§ 2254(d)(1)] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

### III. DISCUSSION

### A. Failure to Investigate

Cowan's primary claim—and the only one for which she was granted a stay—asserts that her trial counsel was ineffective for failing to interview and call at trial four defense witnesses. According to Cowan, the witnesses would have shown that the prosecutor failed to demonstrate that she possessed or knew about the cocaine and handgun found in the Appoline residence on the date of the police raid.

Respondent argues that review of the claim is barred because the trial court relied on Michigan Court Rule 6.508(D)(3), a state procedural rule, as a basis for denying relief. The passage relied upon by Respondent in the trial court's order states: "Defendant cannot meet the 'good cause' and 'actual prejudice' standards required to establish entitlement to relief from judgment because she has not shown that defense counsel's failure to interview or call as witnesses the other individuals in the home

amounted to ineffective assistance of counsel." (ECF No. 82-9, PageID.2312.) The bulk of the trial court's opinion discusses only the underlying substantive merits of the claim in light of the evidence presented at the hearing. (*Id.*, PageID.2312-15.) Despite the passing reference to Rule 6.508(D)(3), therefore, the opinion appears to have been a merits adjudication.

Procedural default is not a jurisdictional bar to habeas review. *See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural default issue here is muddled by the fact that the trial court made only a passing reference to a state procedural rule and mostly rested its decision on the substantive merits of the federal claim. The court will therefore bypass the procedural default argument and will address the merits of Cowan's claims.

Under clearly established Supreme Court law, a violation of the Sixth Amendment right to the effective assistance of counsel is established where an attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

To establish that she was prejudiced by her counsel's deficient performance, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). When deciding whether counsel's errors prejudiced a petitioner, the court "must consider the totality of the evidence before the . . . jury," on the assumption that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695.

On the whole, the standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).

Based on the trial record and the evidence elicited at the evidentiary hearing, the state trial court's adjudication of Cowan's claim was reasonable. After reciting the *Strickland* standard, the trial court first found that Cowan failed to demonstrate that she was prejudiced by the failure to interview and present the defense witnesses:

> At trial, the prosecutor argued that Defendant must have known about the drugs found in the house because Defendant lived at the house.

16

While Carter's testimony established that Defendant lived between the Appoline house and her grandmother's house, it also indicated that Defendant visited the Appoline house, where her children lived, almost daily, that she sometimes spent the night there, that she slept in the bedroom where the drugs were found whenever she spent the night at the house, and that she slept in the bedroom where the drugs were found on the night of the raid. In addition, Defendant had a key to the locked closet where the drugs were found. When asked whether Defendant kept personal belongings in the Appoline house, Carter testified that, among other items, Defendant "maybe [kept] some clothes in her closet." Carter's testimony does not show that Defendant would not have known about the drugs or that she did not exercise dominion and control over them. While Carter's testimony also revealed that Rory Jones had a key to the house and the bedroom, and that he came and went at the house as he pleased, the argument that the drugs belonged to Rory Jones, and that Rory Jones was the person in the house that participated in the controlled buy, was presented to the jury at trial. Specifically, defense counsel argued that the drugs could have belonged to Rory Jones, noting that there was evidence that Rory Jones' car was seen at the house on the evening in question. Essentially, while Carter's testimony indicated that that Rory Jones may have known about the drugs in the house, it did not negate the evidence of Defendant's knowledge of the drugs. Having reviewed Rachel Carter's testimony at the *Ginther* hearing, the Court cannot conclude that there is a reasonable probability that Defendant would have been acquitted had Rachel Carter's testimony been presented at trial. *Solomonson*, 261 Mich. App. 657, 663-664.

(ECF No. 82-9, PageID.2313-14.) The court then found that Cowan failed to demonstrate deficient performance because if it was true, as Cowan alleged, that she did not live at the Appoline residence, then Cowan surely would have raised the claim at an earlier stage in the proceedings. (*Id.*, PageID.2314.) Further, after an interview with Cowan, the state probation department listed the Appoline residence as her address. (*Id.*) The court concluded that because Cowan had not established prejudice, it did not need to "determine whether counsel's failure to interview and call the witnesses fell below an objective standard of reasonableness." (*Id.*)

The court will focus on the first rationale relied upon by the trial court regarding lack of prejudice. The facts of the case did not change much after the evidentiary

hearing. The prosecutor's trial theory was that Cowan at least constructively possessed the cocaine and firearms found at the Appoline residence because she was an adult who resided at the house who had a key to the room where they were locked away, and she therefore had dominion and control over them. *See People v. Burgenmeyer*, 461 Mich. 431, 439, n. 12 (2000); *People v. Wolfe*, 440 Mich. 508, 519-20 (1992). The testimony produced at the hearing did not undermine that theory. Carter testified that while Cowan did not often sleep at the Appoline house, she came to the house nearly every day, she paid the bills for the house, she was there with Jones on the day of the raid, Jones had permission to stay there, Cowan had a key to the locked room where the drugs were found, and she stayed in the locked room on the infrequent occasions she slept there.

Contrary to her offer of proof, Cowan was unable to produce evidence to the state courts when given the opportunity to do so that showed that she was prejudiced by her trial counsel's alleged failure to interview and present as witnesses the other residents of the Appoline residence. Cowan represented to the Sixth Circuit and to this court that the uncalled witnesses would testify that: (1) Cowan had moved out of the Appoline house and therefore did not have knowledge what went on there, (2) she was not at the residence earlier that day and had no way of knowing that Jones stashed the drugs there on that day, and (3) that she previously became upset with Jones for leaving drugs at the house. Had the uncalled defense witnesses testified to these things, Cowan might have demonstrated that her counsel's failure to interview and present these witnesses undermines confidence in the trial outcome.

But the evidence Cowan actually presented to the state courts fell far short. She was able to produce only her daughter Rachel Carter's testimony. And even Carter's testimony was different from her affidavit. Carter stated in her affidavit that Rory Jones was not home when she returned with her sister and Cowan after school. (ECF No. 75, PageID.1908, Carter Affidavit.) This would have tended to indicate (along with the information in the other affidavits) that Cowan was not there and unaware of the possibility that Jones stashed drugs in the house that day. At the hearing, however, Carter testified that Jones was present at the house when they returned that evening, and that he left afterwards. Trial testimony that Cowan and Jones were at Appoline at the same time before the raid—though certainly not dispositive—would have helped the prosecution more than it would have helped the defense.

Moreover, Carter testified that Cowan visited the Appoline residence nearly every day, even if she rarely slept there. She also testified that Cowan had a key to the master bedroom where the drugs were found. And she confirmed that the women's clothing and belongings found in the master bedroom, in fact, belonged to Cowan. She also testified that Cowan paid the bills for the residence with Jones' help, and that Cowan gave Jones permission to stay at the residence. All of this would have supported, not undermined, the prosecutor's argument that Cowan had constructive possession of the drugs. The trial court therefore did not unreasonably apply the *Strickland* prejudice standard when it found that Cowan failed to show a reasonable probability of a more favorable trial outcome had trial counsel interviewed and called Carter as a witness at trial. 28 U.S.C. § 2254(d)(1).

As for the failure to interview and call Crystal Cowan, Richard Carter, and Papillon Tucker, Cowan failed to demonstrate *Strickland* prejudice when she failed to secure these witnesses' testimony at the hearing. Cowan bore the burden of establishing *Strickland* prejudice. Cowan cites no authority (and the court is aware of none) standing for the proposition that a defendant may demonstrate *Strickland* prejudice by way of affidavit after the affiants fail to appear and testify at a hearing held to adjudicate the merits of the claim. Indeed, Michigan law recognizes that a court may only consider the "record evidence," i.e., the trial record and the record of the evidentiary hearing when determining whether the defendant has established entitlement to relief:

> "A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately." *People v. Jelks*, 33 Mich. App. 425, 431 (1971).
>
> If the record made before a defendant is convicted does not factually support claims he wishes to urge on appeal, he should move in the trial court for a new trial or, where the conviction is on a plea of guilty, to set aside the plea, and seek to make a separate record factually supporting the claims. *See People v. Taylor*, 387 Mich. 209, 218 (1972). Without record evidence supporting the claims, neither the Court of Appeals nor we have a basis for considering them.

*People v. Ginther*, 390 Mich. 436, 442-443 (1973).

That is a matter of state procedural law, but Cowan points to no principle of federal law that requires a reviewing court to weigh non-record affidavits after a hearing has been held to determine whether a defendant is entitled to relief on an ineffective assistance of counsel claim. Rather, a habeas petitioner challenging his attorney's

failure to present a witness at trial must show that the witness would have been available and willing to testify in his defense, because otherwise the jury would never hear the testimony. *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (rejecting ineffective assistance claim where "witnesses were unavailable or would not cooperate with counsel at the time of pre-trial preparation"). That is essentially what happened here. It is one thing to convince a witness to sign a piece of paper; it is another to secure their sworn testimony and subject them to cross-examination at a formal court proceeding. When Cowan failed to produce these three witnesses at the state court evidentiary hearing, she failed to create record evidence for the state courts to consider in determining whether she was prejudiced by her trial counsel's failure to call them. Thus, the trial court did not unreasonably apply federal law in failing to consider the affidavits of the non-testifying witnesses when evaluating whether Cowan demonstrated *Strikland* prejudice. 28 U.S.C. § 2254(d)(1). Accordingly, the state court's determination that Cowan failed to demonstrate prejudice was reasonable, precluding habeas relief under § 2254(d).

Cowan blames the attorney appointed to represent her at the hearing and the private investigator he used for failing to secure and present the three other witnesses. (*See* ECF No. 75, PageID.1902-04, Amended Petition.) The alleged ineffectiveness of counsel during state collateral post-conviction proceedings, however, is not a ground for habeas relief. 28 U.S.C. § 2254(i); *see also Post v. Bradshaw*, 422 F. 3d 419, 423 (6th Cir. 2005); *Cooey v. Bradshaw*, 338 F. 3d 615, 622 (6th Cir. 2003). In any event, post-conviction counsel elicited testimony at the hearing regarding the other witnesses' availability. Crystal Cowan lived in Georgia, and though she had been in Michigan a

month before the hearing, she could not afford or was otherwise unable to make another trip. Papillon Tucker was apparently unwilling or unable to testify because of his own "court issues." And Richard Carter had simply not been in contact with Rachel Carter or Cowan for the few months prior to the hearing. These are not some set of extraordinary circumstances that required the trial court to credit the untested affidavits with veracity or even to weigh them somehow in a merits analysis.

Cowan raises a few additional points of law regarding this claim. She claims that apart from her trial counsel's obligation to interview and call these witnesses, the prosecutor had an independent obligation to present them because they were so-called *res gestae* witnesses. The argument is unavailing for two reasons. First, it was only before its amendment in 1986 that Mich. Comp. Laws § 767.40 required a prosecutor to endorse and produce all *res gestae* witnesses. *See People v. Baskin*, 145 Mich. App. 526, 530-531 (1985). The amendment to the statute deleted the requirement that the prosecutor produce such witnesses. *See People v O'Quinn*, 185 Mich. App. 40, 44 (1990). Second, the failure of a Michigan prosecutor to produce *res gestae* witnesses does not implicate any federal constitutional right. *See Lewis v. Jabe*, 891 F.2d 291, 1989 WL 145895, at *2 (6th Cir. 1989); *Atkins v. Foltz*, 856 F.2d 192, 1988 WL 87710, at *2 (6th Cir. 1988).

Next, citing *Ramonez v. Berghuis*, 490 F.3d 482, 490-91 (6th Cir. 2007), Cowan argues that a court reviewing a claim of ineffective assistance of counsel for failing to call defense witnesses may not evaluate the credibility of the uncalled witnesses because such an evaluation is solely for the jury. This argument is unavailing because the issue in *Ramonez* was whether a factual finding by the state court that uncalled

defense witnesses would not have been credible was subject to the presumption of correctness under 28 U.S.C. § 2254(e)(1). *Id.*, 490 at F.3d at 489-90. Unlike *Ramonez*, the Court here is not applying § 2254(e)(1) to state-court credibility determinations regarding the uncalled defense witnesses, and indeed the trial court did not make any such determinations. Rather, as indicated above, the court properly evaluated the trial court's *Strickland* prejudice analysis for reasonableness under § 2254(d)(2).

Finally, citing *Doggett v. United States*, 505 U.S. 647 (1992), Cowan argues that she is excused from demonstrating *Strickland* prejudice due to the six-year delay by the trial court in addressing her motion for relief from judgment. *Doggett* is a Speedy Trial case. It has no application to a claim of ineffective assistance of counsel. While the delay is regrettable and evidence may have been lost as a result, no principle of clearly established federal law required the state court to presume prejudice in such circumstances. Thus, Cowan has failed to demonstrate entitlement to habeas relief, and her petition will be denied.

### B. Remaining Claims

Cowan's remaining claims are time-barred. The amended petition raises allegations of ineffective assistance of counsel that were not presented in the original petition (ECF No. 1), nor in Cowan's initial motion to amend her petition (ECF No. 21). Following the remand from the Sixth Circuit, Cowan filed a motion to stay that raised the failure to investigate claim discussed above as well as a different set of claims from the ones considered here. (ECF No. 57.) The court granted the motion in part, staying the case so that Cowan could present the state courts with her failure to investigate claim only. (ECF No. 60, PageID.1792.) Then, returning from state court, Cowan presented

an amended petition which for the first time in federal court raised claims that trial counsel was ineffective for: (1) being a drug addict at the time of trial; (2) having a relationship due to his drug use with prosecution witness Officer Scott; (3) failing to obtain discovery materials from the prosecution; (4) misstating evidence at trial that Cowan owned the Appoline residence and that her fingerprints were found on a baking soda box rather than the cigar box; (5) failing to obtain cell phone records showing that Cowan was not involved in the conversations between the participants of the controlled buy; (6) failing to compel the production of *res gestae* witnesses; (7) failing to file a notice of alibi; and (8) failing to review the presentencing information report with Cowan prior to sentencing.[1]

As the court explained in its previous order, the one-year limitations period for filing the habeas petition expired on November 30, 2006. (ECF No. 29, PageID.1469.) Yet the additional allegations of ineffective assistance of counsel were first presented to this court in Cowan's amended habeas petition filed on November 13, 2019, well after expiration of the limitations period.

An untimely amendment to a habeas petition "relates back" to an original petition filed within the one-year limitations period only if the original petition and the amended petition arise out of the same "conduct, transaction, or occurrence" under Fed. R. Civ. P. 15(c)(1)(B). *See Mayle v. Felix*, 545 U.S. 644, 664 (2005). Under *Mayle*, to qualify for relation back, the original and amended petitions must "state claims that are tied to a

---

[1]     Cowan also claims in her amended petition that her trial counsel failed to object to the admission of drug-profile evidence. That claim was raised in the original petition and rejected on the merits. (ECF No. 40, PageID.1557-58.) The Sixth Circuit affirmed that determination. *Cowan*, 645 F.3d at 817, 821.

common core of operative facts." 545 U.S. at 664. *Mayle* cautioned, however, not to read the "conduct, transaction, or occurrence" requirement so broadly as to render meaningless the statute of limitations. *Id*. at 662-64.

Distinct factual bases for claims of ineffective assistance of counsel generally do not arise out of the same conduct, transaction, or occurrence in this context. *See, e.g., Clark v. United States*, 2021 U.S. App. LEXIS 18999, at *9 (6th Cir. June 24, 2021) (holding that counsel's alleged failure to investigate case, to interview and call witnesses, and to file a notice of appeal did not relate back to allegation that counsel was ineffective regarding plea advice because there was "no overlap of operative facts"); *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017) (finding that an allegation that counsel failed to request a psychiatric evaluation did not relate back to broad allegation that counsel failed "to investigate and raise a defense"); *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (holding that a claim that appellate counsel failed to challenge drug amounts used to calculate base offense level did not relate back to claim that appellate counsel failed to challenged career offender enhancement); *Evans v. United States*, 284 F. App'x 304, 305, 313 (6th Cir. 2008) (reasoning that a claim that trial counsel failed to pursue particular avenue of impeachment did not relate back to claim that trial counsel gave incorrect plea advice); *Cox v. Curtin*, 698 F. Supp. 2d 918, 931 (W.D. Mich. 2009) ("[A] petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.") (quoting *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)).

The new claims of ineffective assistance of counsel Cowan asserted in her motion for relief from judgment and then included in her amended habeas petition do not share a common core of operative facts with the claims presented in her original petition, her initial motion to amend, or even in her motion to stay following the remand order. They all concern a different set of acts or omissions on the part of her trial counsel from those that appeared in the prior pleadings. To hold that such a new list of particular allegations of ineffective assistance relate back to a different list of specific allegations would be to construe "conduct, transaction, or occurrence" so broadly as to render meaningless the statute of limitations. *Mayle*, 545 U.S. at 662-64. Accordingly, review of Cowan's remining claims is barred by the statute of limitations. As none of Cowan's claims merit relief, the petition will be denied.

## C. Certificate of Appealability

Before Cowan may appeal this decision, the court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Cowan must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of any of Cowan's claims. Thus, the court will deny a certificate of appealability.

## IV. CONCLUSION

IT IS ORDERED that the "Amended Petition for Writ of Habeas Corpus" (ECF

No. 75) is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

s/Robert H. Cleland                    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 15, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, July 15, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\06-
13846.COWAN.DenyingPetitionforHabeasCorpusandCertificateofAppealability.BHB.RMK.docx